# United States Court of Appeals
## For the First Circuit

No. 09-1928

ÁUREA VÁZQUEZ-RIJOS,

Plaintiff, Appellant,

v.

ABRAHAM ANHANG, BARBARA ANHANG,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

---

Before

Torruella, Leval,[*] and Lipez, Circuit Judges.

---

Nicolás Nogueras Cartagena, with whom Patricia Ramírez Gelpí was on brief, for appellant.
Luis G. Rullán-Marín, with whom Law Offices of Luis G. Rullán, PSC was on brief, for appellees.

---

August 17, 2011

---

[*]Of the Second Circuit, sitting by designation.

**LIPEZ, <u>Circuit Judge</u>**.  Plaintiff Áurea Vázquez-Rijos ("Vázquez") sued her deceased husband's parents, Abraham and Barbara Anhang, seeking a share of his apparently sizable estate. More than three years after the suit was filed, the district court dismissed it with prejudice due to Vázquez's noncompliance with court orders, her many lengthy delays in prosecuting the suit, and her failure to serve Barbara Anhang.  Vázquez appeals, arguing that the district court abused its discretion.  Finding no such abuse, we affirm.

## I.

### A.  The Murder of Adam Anhang Uster

On September 22, 2005, Adam Anhang Uster was leaving a restaurant in San Juan, Puerto Rico, with Vázquez, his wife of six months, when a man attacked the pair, stabbing Adam and fracturing his skull.  Vázquez was seriously wounded; Adam died that evening. Prosecutors initially secured the conviction of a man who, several months later, was exonerated by an FBI investigation.  The same investigation also led a federal grand jury to indict Vázquez and one Alex Pabón Colón under 18 U.S.C. § 1958(a), which criminalizes the use of interstate commerce facilities in the commission of murder-for-hire.  According to the June 4, 2008 indictment, Vázquez offered Pabón three million dollars to murder her husband and, on the fatal night, lured her husband to an agreed-upon spot in Old

-2-

San Juan, where Pabón killed him.  Pabón pled guilty shortly after his arrest but has not yet been sentenced.

## B.  Vázquez Sues the Anhangs

On March 29, 2006, six months after her husband's death, Vázquez sued Adam's parents, Abraham and Barbara Anhang, in Puerto Rico Superior Court.  Vázquez alleged that the Anhangs had assumed control of Adam's estate and had prevented her from accessing the assets therein.  She claimed that she is entitled to a portion of the estate under the terms of the prenuptial agreements that she and Adam had executed, as well as the provisions of the Puerto Rico Civil Code governing a widow's usufructuary interest and community property.[1]  Vázquez also sought damages from both defendants to compensate for the harm caused by their "obstinate attitude and disregard of [her] physical and emotional condition and financial situation."

Abraham Anhang was served with the summons and complaint on August 8, 2006.  On August 28, the case was removed to the District Court for the District of Puerto Rico.  Abraham answered the complaint on September 5, 2006.  In February of 2007, the court

---

[1] Under Puerto Rico law, usufruct is "the right to enjoy a thing owned by another person and to receive all the products, utilities and advantages produced thereby, under the obligation of preserving its form and substance, unless the deed constituting such usufruct or the law otherwise decree[s]."  P.R. Laws Ann. tit. 31, § 1501.  A surviving spouse may become entitled to a usufructuary interest in the decedent's property by operation of law.  See id. § 2411.

-3-

set an initial scheduling conference for April 4. Initial scheduling conference memoranda were due March 23. See D.P.R. Cv. R. 16(a). Abraham filed his memorandum on that date; Vázquez filed her memorandum eleven days late, on April 3.

On April 4, 2007, Vázquez requested, for the first time, that the court issue a summons for Barbara Anhang.[2] Vázquez's motion stated that Barbara was an indispensable party to the action and that she had not yet been served. The summons was issued April 19.

Also on April 4, the court held the planned scheduling conference. The minutes reflect that the parties advised the court that some of the discovery they needed for the case was unavailable due to the pendency of a related state-court criminal suit. In an order issued the same day, the court set various discovery deadlines and explained that they would be rigorously enforced and that no extensions would be granted except upon a certified showing of good cause. The court further warned that it would not hesitate to sanction any obstinacy from the parties.

Discovery proceeded and the parties agreed that Vázquez would be deposed August 27, 2007, at defense counsel's office in Puerto Rico. She was deposed on August 27 and 28.

---

[2] The fact that Barbara had not yet been served had been pointed out by Abraham in his notice of removal, answer, and initial scheduling memorandum.

On September 7, Vázquez filed a motion requesting the issuance of another summons for Barbara Anhang. She explained that, because Barbara resided in Canada, Vázquez had been unable to "proceed with [the prior] [s]ummon[s] and the same has already expired." Abraham opposed the motion, which was denied as moot after Vázquez filed a return of service reflecting that the complaint and summons had been sent in a UPS package delivered October 9. Barbara moved to dismiss the complaint due to insufficient process, insufficient service of process, and failure to join an indispensable party.[3] See Fed. R. Civ. P. 12(b)(4), (5), (7).

On April 24, 2008, Abraham filed a motion to compel Vázquez to appear and continue her deposition. Defense counsel represented that efforts had been made to coordinate the deposition but that Vázquez could not return from Rome[4] for a deposition until August of 2008. The court granted the motion, stating that discovery would not be delayed any further. In the order, the court "forewarn[ed] Plaintiff that failure to comply may warrant the harshest of sanctions."

---

[3] The allegedly unjoined indispensable party was Barbara herself.

[4] Vázquez had apparently been residing in Rome since the summer of 2006, shortly after she filed the complaint. Her counsel stated that she could not return because she was studying.

-5-

On May 22, 2008, Vázquez filed a motion for reconsideration, explaining that she had become a suspect in the FBI's investigation of Adam's murder, and arguing that it was unreasonable to ask her to appear for a deposition at which she would be asked questions related to the criminal matter. Vázquez also stated that she was pregnant with twins and was advised not to travel to Puerto Rico until after her children were born. As purported evidence of the pregnancy and medical advice, Vázquez filed two documents in Italian which were not translated. The court denied the motion to reconsider on the grounds that the discovery deadline had already been extended by several months and that not all of the questions at the deposition were likely to touch upon matters that implicated Vázquez's Fifth Amendment right against self-incrimination. The court also noted that Vázquez's repeated postponements of her deposition led the court to question the credibility and reliability of the Italian medical certificate.

Despite the court's refusal to excuse Vázquez from the continuation of her deposition, she failed to appear at the appointed time. Abraham promptly moved for dismissal under Federal Rule of Civil Procedure 37.[5] Vázquez opposed the motion and filed

---

[5] In his motion, Anhang cited Rule 37(b)(2)(C), which contemplates payment of attorney's fees and expenses by a disobedient party or his attorney. Anhang was apparently relying upon the prior version of Rule 37, which was restructured as of December 1, 2007. The amendment was largely one of form, however, and the dismissal sanction Anhang sought under the prior version remains available under current subsections (b)(2)(A) (failure to

-6-

a handwritten note in Italian that she claimed was a statement from her doctor explaining her medical condition and confirming that the condition prevented Vázquez from returning to Puerto Rico. Once again, no translation was filed.

On June 11, 2008, Vázquez requested that the court stay the proceedings due to the criminal indictment that had just been returned against her. She argued that one of the main issues in the civil case was her entitlement to part of Adam's estate which turned to a great extent upon whether she had been complicit in his murder.[6]

In a July 2, 2008 order, the court denied both the motion to dismiss for failure to appear at the deposition and the motion to stay the proceedings. In a combined order, the court reviewed this circuit's precedent regarding the harshness of dismissing a case under Rules 37 or 41, and stated that Vázquez's noncompliant conduct was not "extreme" and that Abraham had not shown what prejudice, if any, that conduct had caused. The court also opined that Vázquez's effort to serve Barbara approximately 183 days after the summons issued was not unreasonably untimely, and gave Vázquez

---

obey court discovery order) and (d)(1)(A)(i) (failure to appear for party's own deposition). In its order denying Anhang's motion, the district court also relied on the outdated version of the rule. For the sake of simplicity, we refer generally to Rule 37.

[6] Under Puerto Rico law, a person who has been sentenced for having made attempts against the life of a testator is disqualified from inheriting under his will. P.R. Laws Ann. tit. 31, § 2261(2).

an additional 60 days to perfect service on Barbara.  Barbara's motion to dismiss was denied as moot and another summons issued on August 29, 2008.  With respect to the motion to stay, the court reiterated that not all of the questions at the deposition would potentially implicate Vázquez's Fifth Amendment privilege.

Defense counsel tried once again to depose Vázquez, on October 21, 2008, but neither Vázquez nor her counsel appeared. Shortly thereafter, on October 24, Abraham moved to dismiss the complaint under both Rule 37 and Rule 41(b), due to Vázquez's extreme delays and flouting of the court's authority and processes. After Vázquez received an extension of time to respond[7] but did not meet the extended deadline, Abraham filed a second motion to dismiss on December 1, 2008.  The same pattern repeated[8] and Abraham filed a third motion to dismiss on January 8, 2009.[9] Finally, Abraham filed a motion to dismiss for lack of prosecution on February 3, 2009.  Vázquez responded to the motions on February 19, arguing again that she should not be blamed for avoiding a deposition because she had already been deposed for two days, and because her appearance in Puerto Rico was precluded by her health

---

[7] Vázquez's counsel cited "problems out of our control" as ground for an extension.

[8] The second extension was requested on the ground that counsel had been at a federal jury trial, which consumed his working time.

[9] The second and third motions did not raise new grounds for dismissal but rather served to renew the October 24 motion.

-8-

and that of her twin daughters, as well as the murder-for-hire indictment.  Once more, she attached Italian documents she claimed were "medical certificates" regarding her twins.  Vázquez also suggested that her deposition be taken by "telephone or other remote means."

In an order issued May 29, 2009, the court dismissed the case with prejudice.  It expressed its frustration with Vázquez's continued failure to appear for a deposition, especially in light of repeated warnings that discovery deadlines were strict and noncompliance with court orders would be sanctioned by dismissal.  Finding the various medical certificates to be inadmissible both under Federal Rule of Evidence 802 and Local Rule 10(b), the court saw nothing in the record to justify postponement of the deposition and discovery.[10]  The court also found that the failure to serve Barbara, an indispensable party, was an egregious lapse, particularly in light of the numerous extensions of time Vázquez had received to complete service.  Vázquez had been warned in April, May, and July of 2008 that continued delays would result in dismissal.  In sum, "after three years of disobedience of court orders, extreme protracted delay[, and] ignorance of dismissal

_____

[10] Under Rule 802, hearsay is generally inadmissible.  What was Local Rule 10(b), and is now Local Rule 5(g), requires litigants to file certified English translations of any non-English documents presented to or filed with the district court.  Local Rule 1(e) states that failure to comply with any local rule "may entail sanctions."

warnings, [Vázquez]'s conduct can be considered . . . extreme deliberate misconduct that warrants the dismissal of this case with prejudice." Vazquez-Rijos v. Anhang, No. 06-cv-1833-DRD, slip op. at 4-5 (D.P.R. May 29, 2009).

On appeal, Vázquez argues that the district court abused its discretion in dismissing the case.[11] She asserts that, at least with respect to the period from early 2008 through September 2008, her precarious twin pregnancy justified her absence from Puerto Rico. She also maintains that she should not be forced to continue discovery in her civil case in the shadow of the indictment against her and that, in any case, the Italian government's policy of not extraditing defendants in potential capital cases prevents her from going to Puerto Rico. Moreover, she protests that she never should have been required to submit to an additional deposition because she had already been deposed for two days. Vázquez also contends that she never willfully disregarded the district court's orders and that she, in fact, continually kept the court apprised of the reasons for her absence and noncompliance.

---

[11] Vázquez also suggests, in passing, that the district court erred in denying her motion to stay the case. The argument is entirely undeveloped and thus waived. See United States v. Zannino, 895 F.2d 1, 17 (1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Moreover, our determination that the dismissal was proper obviates the need for any discussion of the refusal to grant a stay.

**II**.

This court reviews dismissals under Federal Rules of Civil Procedure 37 and 41(b) for abuse of discretion.[12] <u>Malot</u> v. <u>Dorado Beach Cottages Assocs.</u>, 478 F.3d 40, 43 (1st Cir. 2007). "Claims that a court has abused its discretion in dismissing a case for failure to adhere to discovery orders or for failure to prosecute have 'not received a sympathetic ear from us.'" <u>Id.</u> (quoting <u>Damiani</u> v. <u>R.I. Hosp.</u>, 704 F.2d 12, 17 (1st Cir. 1983)).

In order to operate effectively and administer justice properly, courts must have the leeway "to establish orderly processes and manage their own affairs." <u>Young</u> v. <u>Gordon</u>, 330 F.3d 76, 81 (1st Cir. 2003). As such, trial courts have substantial authority to impose sanctions, including dismissal, against a party for noncompliance with various procedural rules and court orders. <u>Id.</u> Dismissal, one of the most draconian sanctions permitted, "ordinarily should be employed . . . only when a plaintiff's misconduct is extreme." <u>Id.</u> Dismissal is only one of the

---

[12] Although the district court did not specify under which rule the case was dismissed, it was apparently one or both of the two rules cited by the defendants, Rules 37 and 41(b). Courts also have inherent power to dismiss for noncompliance with their orders. <u>See</u> <u>Young</u> v. <u>Gordon</u>, 330 F.3d 76, 81 (1st Cir. 2003); <u>Enlace Mercantil Internacional, Inc.</u> v. <u>Senior Indus., Inc.</u>, 848 F.2d 315, 316-17 (1st Cir. 1988) (recognizing Rule 41(b) as "one manifestation of the ancient and inherent power of a trial judge 'to achieve the orderly and expeditious disposition of cases'" (quoting <u>Link</u> v. <u>Wabash R.R. Co.</u>, 370 U.S. 626, 630-31 (1962))). Regardless of the source of the authority, however, we review for abuse of discretion.

authorized forms of sanctions, and the district court "should consider the totality of events and then choose from the broad universe of available sanctions in an effort to fit the punishment to the severity and circumstances of the violation." Id.; see also Enlace Mercantil Internacional v. Senior Indus., Inc., 848 F.2d 315, 317 (1st Cir. 1988) ("[D]ismissal should be employed only after the district court has determined 'that none of the lesser sanctions available to it would truly be appropriate.'" (quoting Zavala Santiago v. Gonzalez Rivera, 553 F.2d 710, 712 (1st Cir. 1977))). In reviewing the dismissal, we similarly review the gravity of the violation and balance it with the need for order in the trial court, the prejudice to the other party, and the preference for disposing of a case on the merits. Young, 330 F.3d at 81. In this case, we have no trouble concluding that the district court was justified in dismissing Vázquez's complaint.[13]

## A. Extreme Misconduct

We have recognized a number of litigation behaviors that comprise "extreme misconduct" warranting dismissal. For example, we have upheld dismissals for "extremely protracted inaction (measured in years), disobedience of court orders, ignorance of

---

[13] We requested supplemental briefing on whether the "probate exception" to federal jurisdiction applied in this case. Based on the parties' submissions, we are satisfied that the exception does not apply.

warnings, [and] contumacious conduct." Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir. 1987) (citing cases).

This case presents conduct that at least meets the first three of those four descriptions. Although Vázquez engaged in some discovery through October of 2007,[14] her foot-dragging began with her first filing in the district court and continued for almost three years. Vázquez's first motion filed with the court was one brought by her mother -- who was not a party to the litigation -- asking for more time to "file an answer before this court" because Vázquez had not been in Puerto Rico for months and had been out of communication with her attorneys. Vázquez's initial scheduling conference memorandum was filed ten days late and without any explanation for the delay. Although Vázquez apparently conducted some discovery from April through October 2007, her only subsequent actions with respect to the case were filing documents attempting to keep her case from being dismissed. She generally filed these late and often without seeking prior approval from the court.

In particular, Vázquez's failure to serve Barbara properly was an egregious delay. The court issued a summons for Barbara on three separate occasions and only once -- more than eighteen months after filing her complaint -- did Vázquez even

---

[14] Vázquez filed an "informative motion" with the court on October 9, 2007, indicating that she had served a first set of interrogatories.

indicate an attempt at service.[15]  After concluding that the UPS delivery, which Barbara did not receive,[16] did not constitute proper service, the court gave Vázquez another sixty days to effect service.  The order stated that the extension would be the last one granted, and that failure to serve would warrant dismissal with prejudice.  Thus, when the district court dismissed the case, it had been pending for over three years without proper service of an indispensable party.[17]

Vázquez also ignored court orders and flouted the court's warnings.  During the initial scheduling conference in April 2007, the court indicated that deadlines must be followed strictly.  In April 2008, the court ordered Vázquez to appear for the continuation of her deposition on penalty of "the harshest of sanctions," but she failed to do so.  Even after that failure, the

---

[15] On September 2, 2008, Vázquez informed the court that she had "made the appropriate contacts to hire a process server [in] Canada" and that service was expected to be made the following day. Vázquez requested an additional three-day extension of time to serve Barbara, which the court granted, but the record does not reflect whether service was attempted on September 3, 2008 or at any point other than in October 2007.

[16] With her motion to dismiss for insufficient process, insufficient service of process, and failure to join an indispensable party, Barbara filed a declaration under penalty of perjury that she was not at home on October 9, 2007, the date Vázquez's process server stated that UPS made its delivery; that no one, from UPS or otherwise, delivered any case-related documents to her; and that she had never received a summons or complaint in this case.

[17] Vázquez herself referred to Barbara as an indispensable party, and does not challenge that characterization on appeal.

court declined to dismiss the action, finding that Vázquez's postponement of the remainder of her deposition appeared justified due to her pregnancy. The court did say that the case would not be stayed indefinitely and that Vázquez could not continue to avoid being deposed on the basis of the Fifth Amendment because not every question would implicate her right against self-incrimination. Despite the court's clear messages, Vázquez again failed to appear for a deposition on October 21, 2008. She then failed to file a timely objection to Abraham's motion to dismiss, despite two extensions of the deadline, causing Abraham to file two reiterations of his first motion and, finally, another motion to dismiss.

As we have said, "it is axiomatic that 'a litigant who ignores a case-management deadline does so at his peril.'" Young, 330 F.3d at 82 (quoting Rosario-Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir. 1998)). The court exhibited considerable patience in allowing Vázquez additional time to appear for a deposition, to serve Barbara, and to file documents with the court. Her disregard for court orders and deadlines undermined the court's authority and its ability to manage the case. See Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002) ("Scheduling orders are essential tools in [case management] -- and a party's disregard of such orders robs them of their utility."). Vázquez also ignored the court's local rules by filing Italian-language documents as

purported evidence of the medical reasons preventing her from traveling to Puerto Rico.

None of Vázquez's excuses for her delays and violations was sufficient to save her case below, and they are no more availing here. The court forgave her failure to appear for a deposition in May of 2008 due to her pregnancy, despite the fact that she never introduced competent evidence that her pregnancy was high-risk, that a doctor had ordered her not to travel, or even that she was pregnant at all. Even assuming that her absence from Puerto Rico was justified through September 2008, when her daughters were born, she did not arrange another date for her deposition, suggest an alternative means of being deposed, or even pay her adversary the courtesy of responding to the notice of deposition to be held in October. Vázquez's delay tactics were extreme, and the court was more than justified in refusing to countenance them.

Similarly, the court correctly rejected Vázquez's argument that the specter of the related indictment against her excused her from appearing at the deposition at all. First, while she certainly had a right to refuse to answer questions on the basis of her privilege against self-incrimination, see Lefkowitz v. Turley, 414 U.S. 70, 77 (1973) ("The [Fifth] Amendment . . . privileges [an individual] not to answer official questions put to him in any . . . proceeding, civil or criminal, formal or informal,

-16-

where the answers might incriminate him in future criminal proceedings."), it was improper to refuse to appear for any deposition whatsoever on that basis, rather than refuse to answer specific questions. The Fifth Amendment privilege "cannot be invoked on a blanket basis." United States v. Castro, 129 F.3d 226, 229 (1st Cir. 1997). This rule makes practical sense. The trial court must be able to review whether the privilege was properly invoked. See United States v. Pratt, 913 F.2d 982, 990 (1st Cir. 1990) (explaining that the potential for incrimination is "a determination for the court . . . to make," and "requires that a particularized inquiry into the reasons for the assertion of the privilege be made"). Without knowing the questions to be put to Vázquez, the court could not determine whether the privilege was properly asserted.

Vázquez's argument that she had fulfilled her obligation to appear by answering questions for two days in August 2007 is also unavailing. Although Federal Rule of Civil Procedure 30(d)(1) provides that a deposition is generally limited to one seven-hour day, that default provision does not apply where the parties stipulate or the court orders otherwise. The record reflects that Vázquez had previously agreed to come to Puerto Rico to continue her deposition. Rule 30(d)(1)'s time limit thus did not apply. See id. advisory committee's note ("The presumptive duration may be extended, or otherwise altered, by agreement.").

Vázquez argues for the first time on appeal that Italy's policy of not extraditing defendants in capital cases prohibits her from going to Puerto Rico to prosecute her case. Vázquez fails to cite any authority for such a policy, however, and thus her perfunctory argument is necessarily waived. See United States v. Zannino, 895 F.2d 1, 17 (1990). More fundamentally, a non-extradition policy does not bear any rational relationship to Vázquez's liberty to travel to the United States of her own free will.

Vázquez also repeatedly protests that her delays and noncompliance with court orders were not willful and thus could not justify dismissal. Although relevant, bad faith is not a prerequisite to employing dismissal as a sanction for misconduct. See Vallejo v. Santini-Padilla, 607 F.3d 1, 9 (1st Cir. 2010).

## B. Consideration of Other Sanctions

Although the district court should, before dismissing a case, consider whether lesser sanctions might be a punishment more suitable to the plaintiff's conduct, it need not do so explicitly. See Malloy v. WM Specialty Mortg. LLC, 512 F.3d 23, 27 (1st Cir. 2008) (looking at court's "implicit reasons for choosing dismissal with prejudice," which could be inferred from defendants' arguments that the court "implicitly adopted"). In this case, Abraham and Barbara moved for dismissal a total of seven times before the case was dismissed. Prior to the dismissal order, the court employed

-18-

other methods in an attempt to manage the case and ensure that it proceeded apace, including issuing multiple warnings and granting a motion to compel Vázquez's deposition. "[W]e show considerable deference 'to the district court's on-the-scene judgment' when selecting the appropriate sanction." Vallejo, 607 F.3d at 9 (quoting Malloy, 512 F.3d at 27). In the face of the repeated and flagrant abuses in this record, the district court was well within its discretion in choosing to dismiss the case after three years of patience and the failure of alternative approaches.

Affirmed.