# United States Court of Appeals
## For the First Circuit

No. 05-1302

JOSÉ A. TORRES-VARGAS ET AL.,

Plaintiffs, Appellants,

v.

MIGUEL PEREIRA ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella and Selya, Circuit Judges.

Marie Elsie López-Adames on brief for appellants.
Salvador J. Antonetti Stutts, Solicitor General, Mariana D. Negrón Vargas and Maite D. Oronoz Rodríguez, Deputy Solicitors General, and Rosa E. Pérez Agosto, Assistant Solicitor General, on brief for appellees.

December 19, 2005

**SELYA**, **Circuit Judge**.  On February 12, 2003, plaintiff-appellant José Torres-Vargas sued his employer, the Puerto Rico Police Department, and several ranking police officers in federal district court.[1]  He sought compensatory and punitive damages, as well as equitable relief, for persecution and a hostile work environment, allegedly motivated by political discrimination.  The complaint raised a salmagundi of claims under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983, 1985, 1986, and 1988, and Puerto Rico law.  The defendants vigorously denied the plaintiff's allegations.

The case traveled along a bumpy road from the beginning. The plaintiff (who claimed that he never received the initial summons) requested and received numerous extensions of time for service of process; he did not actually serve the defendants until September 16, 2003 (more than seven months after the commencement of the action).  One defendant, Rivera (the police superintendent), moved to dismiss the complaint based on Eleventh Amendment grounds. After obtaining another extension of time, the plaintiff opposed the motion.

On March 12, 2004, the police department also moved to dismiss on Eleventh Amendment grounds.  The plaintiff again obtained

---

[1]Torres-Vargas's wife and their conjugal partnership were named as co-plaintiffs.  Because their claims are wholly derivative, we refer for simplicity's sake to Torres-Vargas as if he were the sole plaintiff.  Our decision is, of course, binding on all parties.

an extension of time and eventually opposed that motion. The district court ultimately granted the police superintendent's and police department's motions to dismiss in part (as to the plaintiff's claims for pecuniary damages) and denied them in part (as to the plaintiff's claim for prospective injunctive relief). All claims remained intact as to the remaining defendants.[2]

On August 4, 2004, the district court held a scheduling conference (the second in the case). At that session, it set a December 13, 2004 trial date. That date was later pushed back to June 6, 2005 at the plaintiff's request.

On August 4 — the day of the aforementioned scheduling conference — the defendants served their first discovery requests. Over the following eighty-one days, the plaintiff neither answered the defendants' interrogatories nor produced the designated documents. The defendants faxed a reminder to the plaintiff's attorney, noting that the Civil Rules allowed only thirty days for responding to such discovery requests. See Fed. R. Civ. P. 33(b)(3), 34(b).

At that juncture, the plaintiff asked for, and received, an extension of the due date until October 27, 2004. When no discovery was forthcoming from the plaintiff's camp, the defendants,

_____

[2]On August 6, 2004, two more defendants moved to dismiss the suit, this time for failure to state an actionable claim. See Fed. R. Civ. P. 12(b)(6). After the court granted myriad extensions, the plaintiff filed an opposition, to which the defendants replied. The court never ruled on this motion.

at the plaintiff's beseechment, granted yet another extension to November 8, 2004. That deadline also passed without service of either the answers to interrogatories or the designated documents.

On December 9, 2004, the defendants moved to dismiss the action for both want of prosecution, see Fed. R. Civ. P. 41(b), and failure to comply with discovery deadlines, see Fed. R. Civ. P. 37(b)(2)(C). Shortly thereafter, the plaintiff transmitted answers to interrogatories by facsimile. He simultaneously informed the court that he had fully satisfied his outstanding discovery obligations.

The defendants disputed this claim of compliance, pointing out that the plaintiff, inter alia, had yet to provide them with certified copies of his income tax returns as previously requested. In light of this apparent omission, the district court, on December 28, 2004, ordered the plaintiff to satisfy all outstanding discovery requests by January 10, 2005. The court warned the plaintiff that failure to comply with its order would result in the dismissal with prejudice of his action.

Despite this explicit admonition, the plaintiff failed either to produce the designated documents by the appointed date or to seek an extension of the deadline. The district court, true to its word, entered an order dismissing the case with prejudice pursuant to Rule 37(b)(2)(C) "because of [the plaintiff's] ongoing

failure to prosecute this case and [his] failure to obey this Court's Order."

The following day, the plaintiff again asserted that he had fully complied with the defendants' demand for document production. He made this assertion despite the fact that certain of the documents (most notably, the tax returns) were still missing. Based on the same assertion, he filed successive motions for reconsideration of the dismissal order. The district court denied both motions. This timely appeal followed.

Our analysis begins with bedrock: a federal district court's venerable power to sanction a party who repeatedly fails to comply with court-imposed deadlines cannot be doubted. See, e.g., Nat'l Hockey League v. Metro. Hockey Club, 427 U.S. 639, 643 (1976); Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962). Because the appropriateness of sanctions depends on the facts of the particular case, we review the use of dismissal as a sanction for abuse of discretion. See Nat'l Hockey League, 427 U.S. at 642; Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002). This standard is not appellant-friendly. See Tower Ventures, 296 F.3d at 46. In applying it, a reviewing court must consider the chronology of the case and the totality of the attendant circumstances. Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003). In that process, the court must construct a balance of the relevant factors, including (but not limited to) the trial court's

need to manage its docket, the potential prejudice to the parties, and the policy of the law favoring disposition on the merits. Id.

In this appeal, the plaintiff makes three basic points. First, he argues that his failure to comply with discovery obligations was excusable because the defendants themselves caused his inability to comply. Second, he asseverates that he responded to the defendants' initiatives in "due time," thereby evincing an active interest in the prosecution of the case. Third, he maintains that dismissal was ill-advised because he answered the interrogatories and made a good-faith effort to produce the designated documents. We consider each of these points in turn.

The premise behind the plaintiff's first contention is sound: noncompliance caused by an opposing party's actions sometimes can excuse delay in discovery responses. See, e.g., Ortiz-Anglada v. Ortiz-Perez, 183 F.3d 65, 67 n.4 (1st Cir. 1999). The plaintiff's attempt to slide his case within this integument is, however, unavailing.

The gist of the plaintiff's contention is that the defendants themselves created a stressful work environment that caused him great anxiety and made it difficult for him to meet court-imposed discovery. The main problem with this contention is that it is unsupported; the record is devoid of anything of evidentiary quality that might give substance to the claim. To cinch matters, the plaintiff never voiced this plaint in the

district court.  Consequently, he cannot rewardingly surface it for the first time on appeal.  Teamsters, Chauffeurs, Warehousemen & Helpers Union v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) (explaining that "legal theories not raised squarely in the lower court cannot be broached for the first time on appeal").

Relatedly, the plaintiff tells us that his unwarranted transfer caused him to lose contact with his counsel.  From aught that appears in the record, however, there is nothing about that personnel move that cut the plaintiff off from normal channels of communication.  In the absence of extraordinary circumstances — not present here —  it is certainly not a defendant's responsibility to provide the plaintiff's lawyer with the plaintiff's contact information when the plaintiff moves.  See Spiller v. U.S.V. Labs., Inc., 842 F.2d 535, 537 (1st Cir. 1988).

This brings us to the plaintiff's second contention:  that he took an active interest in the case.  In this regard, he posits that "the docket of the case speaks for itself."  We agree with this emphasis on the docket, but we read the docket differently.

The docket reflects that, from the very commencement of the action, the plaintiff dragged his heels and the district court generously granted him extensions of divers kinds.  The docket also shows that when the case entered discovery, the plaintiff, for no apparent reason, failed to comply with deadlines mandated by the Civil Rules, even after those deadlines were voluntarily extended

by the defendants. To make matters worse, the plaintiff, on December 15, 2004, actively misrepresented to the court that he had fully complied with all outstanding discovery requests. The district court's response was crystal clear: comply in full by January 10, 2005, or face dismissal. The plaintiff's previous display of interest in the case, erratic at best, cannot excuse his noncompliance with this clear and aposematic mandate.

This leaves the plaintiff's third contention: that the lower court should not have issued its most draconian sanction because he complied with the court's order, if not by the stated deadline, then by the next day. This brief delay, he says, was neither willful nor in bad faith.

The plaintiff's claim of compliance is little more than an attempt to rewrite the facts of the case. While the plaintiff eventually answered the interrogatories (albeit belatedly), he never fully complied with his responsibilities for document production.

To be sure, dismissal orders typically are measures of last resort, reserved for extreme cases. But we have held that a party's disregard of a court order is a paradigmatic example of extreme misconduct. See Young, 330 F.3d at 81; Tower Ventures, 296 F.3d at 46. Using dismissal as a sanction in such a case recognizes the court's strong interest in maintaining discipline and husbanding scarce judicial resources; after all, such a sanction not only serves to punish the noncompliant litigant but also acts as a

deterrent to those who might be tempted to emulate a bad example. See Nat'l Hockey League, 427 U.S. at 643.

It is settled law that a party flouts a court order at his peril. Rosario-Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir. 1998). Where, as here, the court appropriately forewarns a plaintiff of the consequences of future noncompliance with an unambiguous order, the court need not exhaust less toxic sanctions before dismissing a case with prejudice.[3]  See, e.g., Young, 330 F.3d at 82; HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 918 (1st Cir. 1988).

We need go no further.  Given the plaintiff's record of dilatory responses, his noncompliance with an unambiguous court order, and his blatant misrepresentation of the status of his discovery responses, there is no principled way that we can find an abuse of discretion in the district court's forewarned decision to dismiss the action with prejudice.

**Affirmed**.

---

[3]The plaintiff's profession of good faith does not alter this result.  "[A] finding of bad faith is not a condition precedent to imposing a sanction of dismissal."  Young, 330 F.3d at 82.