# United States Court of Appeals
## For the First Circuit

No. 16-2148

TODD MCKEAGUE,

Plaintiff, Appellant,

v.

ONE WORLD TECHNOLOGIES, INC.; RYOBI TECHNOLOGIES, INC.;
HOME DEPOT U.S.A., INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark G. Mastroianni, U.S. District Judge]

Before

Torruella, Lynch, and Kayatta,
Circuit Judges.

Alfred Paul Chamberland, Law Office of Alfred Chamberland,
Robert Gerard LaFlamme, and Law Office of Robert G. LaFlamme on
brief for appellant.
Anthony V. Agudelo and Sugarman, Rogers, Barshak & Cohen,
P.C. on brief for appellees.

June 8, 2017

**KAYATTA**, **Circuit Judge**.  This appeal arises out of a civil case in which the plaintiff's two lawyers did nothing to prosecute the plaintiff's claims within generous deadlines, received a second chance, and then failed to oppose a pending motion for summary judgment.  On such a record, we find that the district court did not abuse its discretion in failing to grant yet another reprieve.

## I.

Todd McKeague suffered injuries to his hand while using a table saw.  In late 2014, he sued the three defendants, claiming that they were responsible for a defect in the design of the saw that proximately caused his injuries.  Defendants removed the suit to federal court.  In April of 2015, the parties filed a discovery plan that the district court approved and adopted as an order under Federal Rule of Civil Procedure 16(b).  The plan required the parties to complete fact discovery by December 31, 2015.  It further required plaintiff to serve expert disclosures by January 29, 2016, and it required defendants to serve expert disclosures by March 11, 2016.  Expert depositions were to be taken by April 29, 2016.  After the case was assigned to a new judge, the court modified the order slightly to require that all discovery requests be served by December 31, 2015, with fact discovery to be completed within sixty-five days.  The court also set May 31, 2016, as the deadline for filing summary judgment motions, and June 30,

2016, as the response date. Trial was scheduled for September 19, 2016. All in all, this was plenty of time within which to conduct pretrial proceedings in ordinary course.

Defendants thereupon propounded discovery, serving interrogatories and document requests and deposing plaintiff, all well within the deadlines. Inexplicably, plaintiff served no discovery before the December 31, 2015, deadline. Instead, in early February of 2016, and without leave of the court, plaintiff belatedly served written discovery requests. Plaintiff's counsel prevailed upon defendants to assent to a motion to extend the discovery deadline nunc pro tunc, but then never filed the motion.

Worse yet, apparently plaintiff's counsel did not at the outset retain an expert in this design-defect product-liability case in which plaintiff concedes an expert is required in order to get to trial. See Triangle Dress, Inc. v. Bay State Serv., Inc., 252 N.E.2d 889, 891 (Mass. 1969); Esturban v. Mass. Bay Transp. Auth., 865 N.E.2d 834, 835-36 (Mass. App. Ct. 2007). But see Smith v. Ariens Co., 377 N.E.2d 954, 957 (Mass. 1978) ("[I]n cases in which a jury can find of their own lay knowledge that there exists a design defect which exposes users of a product to unreasonable risks of injury, expert testimony that a product is negligently designed is not required."). In his initial disclosures under Federal Rule of Civil Procedure 26(a)(1) filed on June 12, 2015, plaintiff identified Dr. Stephen Gass, David Fanning, and David

Fulmer (the cofounders of a table saw manufacturer in Oregon) and Darry Robert Holt (a mechanical engineer) as possible expert witnesses who could testify about the safe design of table saws and the likelihood that defendants knew of safer alternative designs for the saw that plaintiff alleged injured him, but plaintiff noted in his disclosure that he had "not retained any expert witness as of the date of this filing."  In an interrogatory answer served four months later on October 26, 2015, plaintiff added another name to the list, stating that he might call as an expert witness an engineer named Richard Montifusco.  Plaintiff's counsel, however, did not retain Montifusco or any of the other four possible experts at that time.  The final expert disclosure deadline under the scheduling order came and went with no expert designation by plaintiff.  Even when defendants subsequently and timely designated their own expert, plaintiff's lawyers were nowhere to be found, seemingly content to make no effort at a counter-designation.  Nor was this merely a problem of not filing something; plaintiff's lawyers had retained no expert to designate.

Plaintiff's counsel's cumulative neglect came to a head when defendants timely and predictably filed a motion for summary judgment on May 31, 2016.  Citing Enrich v. Windmere Corp., 616 N.E.2d 1081, 1084 (Mass. 1993), and a handful of other cases, defendants argued in their motion, among other things, that the

absence of any expert testimony was fatal to plaintiff's case given that the table saw functioned properly and suffered from no defect obvious to any layperson.

Plaintiff's counsel thereupon threw themselves (or, rather, threw plaintiff) on the mercy of the court, asking that instead of granting the well-grounded motion for summary judgment, the court reopen discovery, set a new expert-disclosure deadline for the plaintiff, order defendants to respond to plaintiff's untimely discovery, and push back the date by which plaintiff needed to oppose the summary judgment motion. To the likely annoyance of the diligent defendants, the district court granted the delinquents all they sought. The net effect was to swap the order of production, allowing plaintiff to designate an expert after defendants had already done so, and after reviewing defendants' summary judgment motion. In other words, plaintiff received both mercy and some arguable advantage. Presumably, the district court decided that any prejudice to defendants was minimal, enough so to favor an outcome driven by the merits rather than by plaintiff's counsel's neglect. In its words, the district court was "reluctant to excuse [plaintiff's counsel's] neglect, but [was] unwilling to effectively prevent Plaintiff from pursuing his case solely because of [it]." The indulgence was complete, granting plaintiff all the time requested, and more, and without any sanction.

Having evaded the potential consequences of their remarkable inattention to their client's case, plaintiff's lawyers unfortunately stayed their irresponsible course. The new, extended deadline for filing an opposition to the long-pending motion for summary judgment came and went without anything -- even a new motion for extension -- being filed on plaintiff's behalf. On August 10, 2016, two days after the new deadline passed, the district court dismissed the case for failure to prosecute and failure to comply with scheduling orders.

Twelve days after the case was dismissed -- yes, twelve, not one or two -- plaintiff moved for reconsideration. He argued he had timely retained an expert, but that the expert needed more time to review a large number of documents received from defendants on August 2, 2016, and that the documents should have been delivered by defendants on August 1, 2016. Unimpressed, the district court denied the motion for reconsideration. This appeal followed.

## II.

Confronted with repeated failures to comply with its scheduling orders, the district court had considerable discretion in deciding what to do. Cf. Freeman v. Package Mach. Co., 865 F.2d 1331, 1341 (1st Cir. 1988). Perhaps it could have granted yet another extension, although that might have caused one to wonder if the court's orders meant anything at all. Vélez v.

Awning Windows, Inc., 375 F.3d 35, 41 (1st Cir. 2004) ("[T]he judicial process depends heavily on the judge's credibility. . . . If he or she sets a reasonable due date, parties should not be allowed casually to flout it or painlessly to escape the foreseeable consequences of noncompliance." (quoting Méndez v. Banco Popular, 900 F.2d 4, 7 (1st Cir. 1990))). The district court certainly could have imposed a monetary sanction on plaintiff or counsel. See Jones v. Winnepesaukee Realty, 990 F.2d 1, 5-6 (1st Cir. 1993) (approving monetary sanctions levied pursuant to Rule 16(f) of the Federal Rules of Civil Procedure, where sanctioned litigants repeatedly defied court orders). The question posed by this appeal is whether the district court also had the discretion to dismiss the case. For the following reasons, we hold that it did.

We have previously held that when a litigant fails to comply with court deadlines after having already been once granted a reprieve from such a failure, and in the absence of a good excuse, a district court's discretion in setting a sanction is broad enough to include dismissal. Tower Ventures, Inc. v. City of Westford, 296 F.3d 43, 46 (1st Cir. 2002). But see García-Pérez v. Hosp. Metropolitano, 597 F.3d 6, 9 (1st Cir. 2010) (per curiam) (vacating dismissal where district court contributed to case's extremely lethargic pace and did not clearly communicate deadlines to litigants who failed to meet them). Here, plaintiff's

counsel tried to excuse the ultimate failure by claiming that his expert did not have enough time to review documents and form an opinion. Plaintiff's counsel, however, provided zero support for this bald assertion. Moreover, the record shows that it took until August 2, 2016, for defendants to produce the full complement of documents only because plaintiff's counsel repeatedly neglected to send back a protective order, and that plaintiff's counsel did not even send the documents produced on August 1 and 2 to plaintiff's expert until August 13, after the court had entered its order dismissing the case. The expert, too, formed an opinion within six days and made no claim to the district court that he needed to do much other than look at information and materials that had long been available and in the hands of plaintiff's counsel. Compare Malot v. Dorado Beach Cottages Assocs., 478 F.3d 40, 44–45 (1st Cir. 2007) (finding dismissal inappropriate where plaintiffs "offered legitimate reasons" for delays and "promptly informed" defendants when it appeared they would likely miss a deadline), with Hooper-Haas v. Ziegler Holdings, LLC, 690 F.3d 34, 39 (1st Cir. 2012) (approving entry of default against party that willfully ignored deadlines and provided no reasonable excuse for its malfeasance).

The district court acted well within its discretion in dismissing the instant case, especially when one considers that the court's dismissal order simply ended a case that just as easily

could have ended had the court chosen to rule on the unopposed, long-pending summary judgment motion. At the time the case was dismissed, defendants' non-frivolous motion for summary judgment was pending, and plaintiff had neither submitted opposition to defendants' motion nor moved for an enlargement of time to do so. Plaintiff essentially asks us to find that a district court abuses its discretion unless it not only delays ruling on an unopposed motion for summary judgment, but also sua sponte extends the deadline for responding to such a motion when the plaintiff himself is silent. Such a proposed rule makes no sense in light of our decisions stating that a district court may refuse even a proper request for more time to oppose summary judgment if the request is not timely. See Pina v. Children's Place, 740 F.3d 785, 794 (1st Cir. 2014) (noting that a litigant can move for more time under Rule 56(d) where he can show that he "cannot present facts essential to justify [his] opposition," Fed. R. Civ. P. 56(d), but such motion need only be granted when "timely" and "authoritative," because "Rule 56(d) is designed to minister to the vigilant, not to those who slumber upon perceptible rights" (quoting Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 45 (1st Cir. 1998))); cf. Ramos-Peña v. New P.R. Marine Mgmt., Inc., 2 F. App'x 19, 22 (1st Cir. 2001) (per curiam) (unpublished opinion) (finding no abuse of discretion in district court's refusal to

reconsider denial of motion for extension of time to submit opposition to opponent's motion for summary judgment).

Like the district court, we prefer that adjudications be driven by the merits of a case rather than the neglect of counsel. See Malot, 478 F.3d at 43 (recognizing a "strong presumption in favor of deciding cases on the merits"); Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003) (citing HMG Prop. Inv'rs, Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 917 (1st Cir. 1988)) (recognizing the "salutary policy favoring the disposition of cases on the merits"). As the district court implicitly recognized, though, at some point this preference takes a backseat to the important goals of maintaining a fair and orderly adversarial process. Even schoolchildren know that changing the rules mid-course to benefit someone who flouted them creates subtle and even substantial risks of unfairness. Such changes increase uncertainty, introduce delay, raise costs, and invite further violations by others. Our case law evidences these competing considerations. On the one hand, "dismissal ordinarily should be employed as a sanction only when a plaintiff's misconduct is extreme." Young, 330 F.3d at 81 (citing Enlace Mercantil Internacional, Inc. v. Senior Indus., Inc., 848 F.2d 315, 317 (1st Cir. 1988)); see also Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 79 (1st Cir. 2009) (finding dismissal inappropriate where the district court levied "a fatal sanction . . . for a single

oversight"); <u>Benitez-Garcia</u> v. <u>Gonzalez-Vega</u>, 468 F.3d 1, 5 (1st Cir. 2006) (reversing dismissal where there was "no pattern of the plaintiffs repeatedly flouting court orders").  On the other hand, "disobedience of court orders, in and of itself, constitutes extreme misconduct (and, thus, warrants dismissal)."  <u>Tower Ventures</u>, 296 F.3d at 46 (citing <u>Cosme Nieves</u> v. <u>Deshler</u>, 826 F.2d 1, 2 (1st Cir. 1987)); <u>see</u> <u>Young</u>, 330 F.3d at 81.

The bottom line is that we grant a district court wide discretion in deciding how best to balance these considerations fairly in a particular case.  <u>See</u> <u>Batiz Chamorro</u> v. <u>P.R. Cars, Inc.</u>, 304 F.3d 1, 4 (1st Cir. 2002); <u>Aoude</u> v. <u>Mobil Oil Corp.</u>, 892 F.2d 1115, 1117 (1st Cir. 1989).  The district court has a better sense of the underlying equities, the bona fides of counsel's explanations, and the likelihood that a dispensation will make a difference.  Here, given the failure of plaintiff's lawyers to prosecute his claim and their repeated flouting of reasonable deadlines, the district court demonstrated a reasonable sense of nuance in doing the necessary balancing.

<u>Affirmed</u>.